## Fleming, Appellant, v. Erie Trust Company.

*Real estate—Sales—Selling agreement—Agents—Ratification by owner—Duties of agents.*

In an action to recover certain sums alleged to be due under a contract for the sale of real estate, it appeared that the plaintiff had conveyed his land to the defendant company for the purposes of resale and appointed another company as the selling agent.  Five months after the execution of the original contract, the plaintiff

324, (1923).]    Syllabus—Assignment of Errors.

agreed to the substitution of an amended price list and also gave permission to the selling agent to sell lots to individual members or employees of that company.

In a suit to recover commission paid on the sale of lands to such employees, and for profits made by the land company on such sales, a judgment in favor of the defendant will be sustained, where it appeared that the plaintiff had accepted his share of the purchase money without objection, and that he was cognizant of the improvements made on the property and observed the result of the sales.

Under such circumstances, the defendant company could not be charged with a breach of trust, as its duty was to hold the title, make the conveyance to the purchaser, receive the proceeds of the sale and otherwise conform to the agreement between the plaintiff and the land company. Under the evidence submitted, there was no room for contending that the defendant was in default.

Argued April 9, 1923.    Appeal, No. 123, April T., 1923, by plaintiff, from judgment of C. P. Erie Co., May T., 1920, No. 73, in favor of plaintiff in case tried by the court without a jury in suit of H. N. Fleming v. Erie Trust Company.    Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ.    Affirmed.

Assumpsit to recover money alleged to be due on a contract for the sale of real estate.    Before HIRT, J.

The facts are stated in the opinion of the Superior Court.

The court found favor of the plaintiff for $605.51 being 20 per cent commission on money it admitted to be in its hands, and denied other claims.    On exceptions to the finding of facts and conclusions of law, the court dismissed the exceptions and entered judgment in favor of the plaintiff in the amount of $605.51.    Plaintiff appealed.

*Errors assigned* were in dismissing various exceptions to findings of facts and conclusions of law, and the order of the court.

*Charles P. Hewes,* for appellant.—The trust company was bound to the highest degree of fairness and honesty in its dealings with the plaintiff and could take no advantage of the situation: Darlington's Est., 147 Pa. 624; Bartholemew v. Leech, 7 Watts 472; Tower v. O'Neil, 66 Pa. 332; Rich v. Black & Baird, 173 Pa. 92; Hunter v. Long, 13 Del. 345; Adams' Est., 221 Pa. 78; Fesmire's Est., 134 Pa. 67; Beatty's Est., 214 Pa. 449.

*P. V. Gifford,* and with him *H. L. Moore,* for appellee. —The defendant performed its full duty to the plaintiff: Isman v. Niederman, 74 Pa. Superior Ct. 175; Guaranty Trust and Safe Deposit v. Powell, 150 Pa. 16; Chambersburg Insurance Co. v. Smith, etc., 11 Pa. 120.

OPINION BY HENDERSON, J., July 12, 1923:

The plaintiff's action grew out of a contract entered into on the 8th day of May, 1914, between himself, party of the first part, the defendant, party of the second part, and Andrews Land Co., a corporation, party of the third part. The plaintiff was the owner of a tract of land in the City of Erie which he desired to sell and for the accomplishment of this purpose he entered into an agreement with the other parties above named, as a result of which he conveyed the land to the defendant to be held in trust to facilitate its sale. The Andrews Land Co. was to make sale of the property in lots. The proceeds were to be paid to the defendant and distribution was to be made as follows: the taxes were to be paid until conveyances were made to the purchasers; 5% was to be appropriated by the trustee for services; of the balance the plaintiff was to have 80% and the selling company 20%. It was in contemplation that the lots should be sold on small payments over a considerable period. A schedule was prepared by the plaintiff and the selling company exhibiting the number of the lots and the minimum prices at which they should be sold. No sales were made for about five months, when on October 20, 1914, the

plaintiff agreed to the substitution of an amended price list and permission was given by the plaintiff to the Andrews Land Co. "to sell any lots at these prices to any individual member or employee of their company." The property was not in condition to be sold without expensive improvements. The contract provided for the outlay by the land company of $2,000. This was found to be inadequate and further disbursements were made by the land company from its own resources to the extent of about $16,000 for improvements. According to the plaintiff's testimony 36 of the lots were bought by the land company, 34 of them through some of their employees and 39 were sold to other persons. The sales to the employees of the land company were made under the authority given by the plaintiff above referred to. The whole amount of the money received for lots by the defendant was $48,050 which was distributed in accordance with the terms of the contract except as to one item of $605.51 which latter item the company allowed the plaintiff. The contract provided for its rescission and a reconveyance to the plaintiff of any lots not sold at the expiration of five years if the plaintiff so elected. Notice to that effect was given and a reconveyance made as stipulated for. The contention of the plaintiff is (a) that the defendant should not have paid to the land company commissions on the sale of lots to its employees; and (b) that the defendant should be charged with profits made by the land company on the lots which it bought. The court found against the plaintiff on both of these claims and these findings are supported by competent evidence. It cannot be questioned that the plaintiff authorized the sales to the land company. He described them in one of his communications as "dummy sales" that is, they were made to the land company to promote the sales of other parts of the tract, evidently on the theory that the improvements made by the land company in building, opening of streets, etc., would make the unsold lots more valuable. It is clearly shown too that

he received a monthly statement from the defendant of the sales made by the land company during the month, which statement contained the number of lots sold and the names of the purchasers. He received his share of the. purchase money monthly without objection and it is not contradicted that he was cognizant of the improvements made on the property. and observed the result of the sales. The defendant knew that the plaintiff had authorized the land company to buy lots and the court properly held that under such circumstances the defendant could not be charged with a breach of trust. Its duty was to hold the title, make the conveyances to the purchasers, receive the proceeds of sales and otherwise conform to the agreement between the plaintiff and the land company. On the facts found by the court there is no room for the contention that the defendant was in default.

As to the claim for profits made by the land company, it was incumbent on the plaintiff to show, first, that such sales to the employees of the land company were not authorized, and, secondly, that a profit was made. It is admitted by the plaintiff that he did authorize such sales. His claim that he did not suppose so many would be made does not affect the legal situation of the parties. He could have revoked the authority if he had seen fit and he did so after the lapse of about three years from which time no sales were made to employees of the land company. With respect to alleged profits made by the land company on resales of the lots there is no evidence from which the court could determine whether any profits resulted. The only direct evidence on the subject is that of one of the officers of the land company who testified that the company lost $15,000 in the operation. In order to accomplish the sale of lots bought by their employees and taken over by the land company, it was necessary to extend the improvements, to build houses in some cases, to make sales on second and third mortgages, to take other property in exchange for lots, and through a

complication of exchanges and sales dispose of so much of the property as was practicable. Nothing in the evi-dence offered by the plaintiff required the court to find that there had been a specific profit on the lots sold by the land company. The conclusion of the court is well supported by the evidence and requires no further discussion.

The judgment is affirmed.